UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAIME BEAU SPIVEY,

        Petitioner,

v.                                                            Case No. 3:22-cv-852-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

---

## **ORDER**

### **I. Status**

Petitioner Jaime Beau Spivey, an inmate of the Florida penal system, initiated this action on August 5, 2022, by filing a pro se Petition for Writ of Habeas Corpus (Doc. 1; Petition) under 28 U.S.C. § 2254. Spivey raises nine grounds for relief, challenging a 2014 state court (Duval County, Florida) judgment of conviction for sexual battery. Respondents have submitted a response in opposition (Doc. 6; Resp.) with exhibits (Docs. 6-1 to 6-44). The Court provided Spivey with an opportunity to file a reply (Docs. 2, 8), but he did not do so. This case is ripe for review.

### **II. Procedural History**

On January 30, 2013, the state filed an information charging Spivey with sexual battery of B.C. Doc. 6-1. Spivey proceeded to trial, and on August 22,

2013, the jury found Spivey guilty of the charged offense. Doc. 6-2 at 363. On February 24, 2014, the trial court sentenced Spivey to a fifteen-year term of incarceration, designated him as a Habitual Felony Offender (HFO) and a Prison Releasee Reoffender (PRR), and imposed a fifteen-year minimum mandatory sentence under section 775.082(9), Florida Statutes. Doc. 6-11. Spivey, with help from counsel, filed a motion to correct sentencing error under Florida Rule of Criminal Procedure 3.800(b)(2), and the trial court granted the motion in part and struck Spivey's HFO designation. Doc. 6-25.

Spivey appealed and, with help from appellate counsel, filed an initial brief arguing: (1) the trial court erred in denying Spivey's motion for new trial after finding violations of the rule of sequestration; and (2) his PRR sentence was illegal because the information did not notify Spivey of the state's intent to seek a PRR sentence, and the jury was required to make the finding that Spivey qualified for a PRR enhancement. See generally Doc. 6-12. The state filed an answer brief (Doc. 6-13), and Spivey replied (Doc. 6-14). The First District Court of Appeal (First DCA) per curiam affirmed Spivey's judgment and conviction without a written opinion. Doc. 6-15.

On March 4, 2016, Spivey filed his first pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 6-16. In the Rule 3.850 motion, Spivey argued that his trial counsel was ineffective for failing to: investigate two crucial witnesses (ground one); subpoena B.C.'s phone records

(ground two); object to inadmissible character evidence of B.C. (ground three); object to B.C.'s inadmissible prior consistent statements (ground four); object to inadmissible hearsay evidence (ground five); argue that because the state opened the door to such questioning, Spivey had a right to confront and cross-examine B.C. about past sexual encounters (ground six); object and move for a mistrial when the state's witness commented on Spivey's right to remain silent (ground seven); object and move for a mistrial when the prosecutor made statements that improperly shifted the burden of proof (ground eight); object and request a curative instruction when the prosecutor, during closing argument, asked the jury to try on B.C.'s clothing (ground nine); establish that state witness B. Spivey's[1] testimony was unreliable and biased (ground ten); establish B.C. had a motive to lie during trial (ground eleven); establish B.C. lied about the incident to protect her relationship with a third party (ground twelve); request investigative funds from the trial court (ground thirteen); and object and move for a mistrial when the state introduced prejudicial collateral crimes evidence (ground fourteen). See generally Doc. 6-16. Spivey also alleged that the cumulative effect of trial counsel's errors denied him a fair trial (ground fifteen). Id. at 23.

---

[1] B. Spivey is Spivey's half-sister who testified on behalf of the state. Doc. 6-2 at 109. Throughout this Order, the Court refers to her as "B. Spivey."

The trial court found grounds one, three, four, six, and thirteen of the Rule 3.850 motion insufficiently pled and gave Spivey sixty days to file an amendment curing those deficiencies. Doc. 6-17. Spivey filed his amended Rule 3.850 motion on April 5, 2018. Doc. 6-18. The trial court ordered the state to respond to grounds two, eleven, and twelve. Doc. 6-19. After the state responded, the trial court granted an evidentiary hearing on grounds two, eleven, and twelve, and appointed postconviction counsel to represent Spivey at the hearing. Docs. 6-21. The trial court conducted the evidentiary hearing on July 31, 2018. Doc. 6-22. And on August 23, 2018, the trial court denied Spivey's initial and amended Rule 3.850 motions. Doc. 6-23.

Spivey appealed the trial court's order, arguing in his initial brief that the trial court erred when it summarily denied grounds one, three, four, five, six, seven, eight, nine, ten, thirteen, fourteen, and fifteen; and denied grounds two, eleven, and twelve following the evidentiary hearing. Doc. 6-31. The state filed an answer brief (Doc. 6-32); and the First DCA per curiam affirmed the trial court's order without a written opinion (Doc. 6-33).

On October 29, 2019, Spivey filed with the trial court a second Rule 3.850 motion raising a claim of newly discovered evidence of trial counsel's failure to convey a five-year plea offer. Doc. 6-34. He amended the second Rule 3.850 motion on January 15, 2020. Doc. 6-35. The trial court appointed postconviction counsel for Spivey and conducted an evidentiary hearing on the

claim. Doc. 6-37. On April 28, 2021, relying on the testimony given at the evidentiary hearing, the trial court denied the second Rule 3.850 motions. Doc. 6-38. Spivey sought a pro se appeal of the trial court's order (Doc. 6-39), and on July 22, 2022, the First DCA per curiam affirmed the trial court's order without a written opinion (Doc. 6-41).

On October 25, 2022, Spivey filed a third pro se Rule 3.850 motion again based on a claim of newly discovered evidence. Doc. 6-42. The trial court summarily denied the third Rule 3.850 motion on January 5, 2023. Doc. 6-43 at 1-2. Spivey appealed, and the Fifth District Court of Appeal per curiam affirmed the trial court's order without a written opinion. Doc. 6-44.

## III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834

F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Spivey's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>abrogation recognized on other grounds by</u> <u>Smith v. Comm'r, Ala. Dep't of Corr.</u>, 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented

7

in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97–98.

The Eleventh Circuit describes the limited scope of federal review pursuant to

§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual

> determination is not unreasonable merely because the
> federal habeas court would have reached a different
> conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at --
> -, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290,
> 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential

review under § 2254(d) generally is limited to the record that was before the

state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an

examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>,

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

<u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were

adjudicated on the merits in the state courts, they must be evaluated under 28

U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a §

2254 habeas action in federal court, a petitioner must exhaust all state court

remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365–366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747–748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence

---

[4] Murray v. Carrier, 477 U.S. 478 (1986).

> of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (first citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); and then <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's

13

representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

14

expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such,

"[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.</u>
<u>Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Spivey contends that he was denied a fair trial because the state's
witnesses "colluded with a non-witness," violating the trial court's imposition
of the rule of sequestration. Petition at 5. According to Spivey, this non-witness
sat in the courtroom during trial testimony and later informed witnesses
waiting to testify about the substance of the testimony already provided. <u>Id.</u>

Spivey, with help from appellate counsel, raised a substantially similar
claim on direct appeal. Doc. 6-12 at 28-40. But when briefing this issue, Spivey
did not state or propose that it was a federal claim. Instead, Spivey relied on
state law only, arguing that the trial court – failed to heed the standards of
Florida's Evidence Code outlined in section 90.616, Florida Statutes;
erroneously determined the sequestration violations did not affect the
testimony of the witnesses; and neglected to consider whether the violations
were intentionally and done in bad faith. <u>Id.</u> at 28-40 (citing <u>Knight v. State</u>,
746 So. 2d 423 (Fla. 1998); <u>Lott v. State</u>, 695 So. 2d 1239, 1243 (Fla. 1997);
<u>Gore v. State</u>, 599 So. 2d 978 (Fla. 1992); <u>Spencer v. State</u>, 133 So. 2d 729 (Fla.
1961); Charles W. Ehrhardt, Florida Evidence § 616.1 (1998 ed.); 1 Fla. Prac.,
Evidence 616.1 (2014 ed.); <u>Jackson v. State</u>, 177 So. 2d 353(Fla. 3rd DCA 1965);

Wright v. State, 473 So. 2d 1277 (Fla. 1985)). Although Spivey included two references to federal law – one citation to Geders v. United States, 425 U.S. 80, 87 (1976), and a single reference to the Due Process Clause (see Doc. 6-12 at 34, 35) – he did not articulate or fairly present a federal constitutional claim. Spivey's passing reference to a federal constitutional right and a single citation to a federal case amount to no more than an iota of scattered "makeshift needles in the haystack of the state court record." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) (quoting Kelley v. Sec'y, Dep't of Corr., 377 F.3d 1317, 1345 (11th Cir. 2004)). As such, Ground One is unexhausted and procedurally defaulted, and Spivey has failed to show cause for or prejudice to overcome this procedural bar.

In any event, even if the federal nature of this claim had been exhausted, it is still without merit because the state court's adjudication is entitled to deference. In its answer brief filed during Spivey's direct appeal, the state addressed this claim on the merits:

> "[The Florida Supreme] Court has frequently pointed out that the rule of sequestration is intended to prevent a witness's testimony from being influenced by the testimony of other witnesses in the proceeding." Wright v. State, 473 So. 2d 1277, 1280 (Fla. 1985) (citations omitted). Therefore, the purpose of the sequestration rule is to avoid the coloring of witnesses' testimony. Zamora v. State, 361 So. 2d 776, 782 (Fla. 3d DCA 1978). When violated, the trial court must determine if the violation "affected the witnesses'[] testimony to the extent it substantially differed from what it would have been had the witness not heard the testimony." Wright, 473 So. 2d at 1280. On a motion for new trial,

this decision is within the trial court's discretion. <u>Zamora</u>, 361 So. 2d at 782 ("In that appellant has failed to demonstrate actual prejudice to his case, we find no abuse of the trial judge's discretion in refusing to impose sanctions, in the form of a new trial.").

In <u>Spencer</u>, the Florida Supreme Court determined a trial court did not abuse its discretion by allowing two officers to remain in the courtroom during trial, knowing both officers would inevitably testify. <u>Spencer [v. State]</u>, 133 So. 2d [729, 731 (Fla. 1961)]. The trial court determined that as law enforcement officers, they would have no personal interest in the outcome of the case and therefore their testimony would be unaffected. <u>Id.</u> The Florida Supreme Court held that "there is no indication that the presence of the two officers in the court room during the trial resulted in harm to the appellant." <u>Id.</u> However, [i]n <u>Jackson v. State</u>, the Third District Court of Appeals did find prejudice when an officer was allowed to testify to a defendant's confession made to him. <u>Jackson v. State</u>, 177 So. 2d 353, 355 (Fla. 3d DCA 1965). In <u>Jackson</u>, a law enforcement officer, while watching the trial, heard the defendant claim he never admitted to committing the crime. <u>Id.</u> at 354. The officer then told the prosecutor the defendant had admitted the crime to the officer. <u>Id.</u> The officer was allowed to testify at trial. <u>Id.</u> The Third District Court of Appeals found that this confession testimony prejudiced the defendant. <u>Id.</u> at 355.

In the case at bar, the trial court determined that, although the rule of sequestration was violated, its violation did not affect the testimony of any subsequent witnesses. The trial court did not abuse its discretion in making this determination because it relied on the timing of the violation in relation to when the witnesses testified. On August 21, 2013, B.C., Adrian Santiago, and [B.] Spivey were called to testify during [Spivey's] trial. They were the first witnesses to testify in the trial. The trial court found that, after these witnesses testified, they violated the rule of sequestration. The trial court noted, "there was no rebuttal by the State and the witnesses who violated the rule did so at a time that could not have affected the testimony of other witnesses."

The trial in the instant case lasted two days. The witnesses who violated the sequestration were called on the first day of trial, and did not testify after violating the rule. There was no evidence

presented that any other witnesses during the trial were affected by the conversation between these three witnesses. Zachary Derby, an observer during trial and friend of the witnesses at issue, was overheard telling the three witnesses "he just went, saying it was all consensual." This comment was in reference to [Spivey] testifying during trial, and occurred after the three witnesses had testified. The other violation occurred when [B.] Spivey completed her testimony and was seen telling the other two witnesses — who had already completed their testimony — "he made me look like a bad mother." [B.] Spivey further explained, "he was asking questions whether I was doing drugs and drinking and partying with a child upstairs." [Spivey's] argument below was that, because these statements occurred after their testimony, "that that's, in fact, what they were doing all day long." However, [Spivey] provided no proof that any other conversations occurred prior to or during the three witnesses'[] testimony. The trial court did not abuse its discretion [in] rejecting this argument.

[Spivey] asserts the trial court did not articulate when the violations occurred. However, it is clear from the trial court's ruling that the trial judge believed the violations occurred "at a time that could not have affected the testimony of other witnesses." Based on the testimony elicited during the motion for a new trial, it is apparent the court found the violations occurred after the witnesses had testified. The court further explained, "there was no rebuttal by the State[.]" This shows the court's consideration on how the rule could have affected the witnesses, had they been called to testify in rebuttal. During the hearing, the trial judge was very concerned about getting the order of witnesses correct. The trial court properly found that the violations occurred after the witnesses testified, and therefore [Spivey] was not prejudiced.

Doc. 6-13 at 9-12 (record citations omitted). The First DCA found Spivey's argument to be without merit and per curiam affirmed Spivey's judgment and conviction without a written opinion. Doc. 6-15.

As such, the Court addresses this claim under the deferential standard for federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, relief on the claim in Ground One is due to be denied.

## B. Ground Two

Spivey raises three Sub-Claims, all of which are premised on allegations of ineffective assistance of counsel.

### i. Sub-Claim One and Sub-Claim Two

In Sub-Claim One, Spivey contends that his trial counsel was ineffective for failing to ask the trial court for investigative funds. Petition at 7. In Sub-Claim Two, he asserts his trial attorney failed to investigate two crucial witnesses – (1) William Griffin, and (2) a relative of B.C. Id. According to Petitioner, Griffin would have offered testimony that B.C. told him that her sexual encounter with Spivey was consensual, she was angry Spivey "ghosted" her after sex, and that B.C. is bisexual and had been in a relationship with B. Spivey. Id. He states that the relative of B.C. would have testified about B.C.'s "previous false accusation" and "her sexual orientation." Id.

Spivey raised Sub-Claim One and Sub-Claim Two in grounds thirteen and one of his initial Rule 3.850 motions, respectively. Doc. 6-16 at 5-7, 21-22; Doc. 6-18 at 4-6, 21-23. The trial court summarily denied the claims, stating:

> Defendant maintains counsel was ineffective for failing to petition the court for funding to investigate. Defendant states counsel took this case pro bono and did not conduct certain investigation[s] due to lack of funding. Specifically, Defendant maintains there were several witnesses counsel should have investigated: the victim's uncle; Stephen Griffin;[5] the victim's ex-girlfriend, who the victim allegedly called after the incident; [and] Defendant's stepmother and sister's biological mother, who the victim spoke to regarding the incident. Defendant further suggests counsel did not investigate Defendant's polygraph or a DNA expert.

> On October 31, 2017, this Court granted Defendant sixty days leave to amend this Ground to render it sufficient under Nelson v. State, 875 So. 2d 579, 583-84 (Fla. 2004), to give more detail as to what the witnesses or evidence would have provided and to outline prejudice for the alleged deficiency. Defendant was further given two extensions in which to file his Amended Motion. Defendant, however, failed to explain what any witness or polygraph would have added to his case and how its omission prejudiced him specifically, with the exception of the DNA expert. Thus, this Court will address Defendant's allegations as to the DNA expert, but otherwise finds the claim subject to summary denial. See Fla. R. Crim. P. 3.850(f)(3).

> Defendant alleges counsel should have investigated the use of a DNA expert "to explain the [likelihood] of discovering Defendant's DNA after the extended period of time between [the] alleged incident and medical examination." At trial, testimony was presented that the victim's vaginal swabs revealed a foreign DNA profile, matching Defendant. However, this Court finds no reasonable probability the result of the proceeding would have

---

[5] In his initial Rule 3.850 motions, Spivey refers to this potential witness as "William Stephen Griffin." Doc. 6-16 at 5.

been different had an expert testified regarding the likelihood of finding such DNA after the period of time [] that elapsed between the incident and examination. This is true as Defendant admitted to having sexual intercourse with the victim, which would explain the presence of his DNA. Defendant's defense was simply that the sex was consensual and, thus, would not be affected by the finding of his DNA in the victim. Moreover, counsel cross examined the analyst who testified regarding the DNA, and elicited testimony that such evidence could not show whether it was there through a consensual sexual encounter. Additionally, a stipulation was entered at trial that Defendant claimed the sex was consensual before the DNA results came back, confirming the presence of his DNA. Accordingly, this Court finds counsel was not ineffective in this regard and Defendant is not entitled to relief on this Ground.

    . . . .

    Defendant alleges counsel was ineffective for failing to investigate two witnesses, the victim's uncle and Defendant's friend, Griffin. On October 31, 2017, this Court granted Defendant sixty days leave to amend this Ground to render it sufficient under <u>Nelson v. State</u>, 875 So. 2d 579, 583-84 (Fla. 2004). On January 12, 2018 and March 2, 2018, this Court granted Defendant two extensions of time in which to file his Amended Motion. However, this Ground remains insufficiently pled as Defendant failed to allege that these witnesses were available to testify at trial. <u>See</u> <u>Nelson</u>, 875 So. 2d at 583-84. Additionally, at the evidentiary hearing, it was made clear that counsel indeed spoke to Griffin at length and listed him as a defense witness, but then decided not to call him to testify. Thus, this Court summarily denies the instant claim. <u>See</u> Fla. R. Crim. P. 3.850(f)(3).

Doc. 6-23 at 3-4 (record citations omitted). Spivey appealed, and the First DCA

per curiam affirmed the trial court's denial without a written opinion. Doc. 6-

33.

    Respondents argue that these Sub-Claims are unexhausted because the

state court found both claims insufficiently pled and rejected them based on an

independent and adequate state procedural rule. Resp. at 62-63. But since the First DCA did not issue a written opinion, this Court cannot make assumptions about the basis for its affirmance of the trial court's order. As such, under Eleventh Circuit precedent, this Court must find that the trial court's ruling on these claims amounted to an adjudication on the merits. See Pope v. Sec'y, Dep't of Corr., 680 F.3d 1271, 1285-86 (11th Cir. 2012) (holding that a Florida state court's dismissal of a postconviction claim for facial insufficiency constitutes, at least for purposes of a procedural default analysis for a federal habeas claim, a ruling on the merits that is not barred from federal review). Indeed, the trial court's rulings on each issue were intertwined with the federal Strickland standard, and the state's answer brief filed during Spivey's appeal of the trial court's order addressed the merits of these claims, arguing the allegations were refuted by the record. Doc. 6-32 at 12-13, 24-25. Therefore, the state court's ruling on these claims is considered an adjudication on the merits subject to habeas review under § 2254(d).[6]

Accordingly, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these

---

[6] Respondents raise this same exhaustion argument for Grounds Three, Four, and Six. See Resp. at 66, 68, 73. In the interests of judicial economy, the Court finds those Grounds are exhausted for the same reasons described in here.

claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Spivey is not entitled to the relief he seeks.

In any event, even if the state court's adjudications are not entitled to deference, these claims are still without merit. Notably, during the evidentiary hearing on Spivey's initial Rule 3.850 motions, Spivey's trial counsel testified that he did not seek state funding for his investigation because Spivey's mother repeatedly advised him that she planned to subsidize her son's defense. Doc. 6-22 at 88. But according to trial counsel, Spivey's mother never provided any money, and counsel could not control Spivey's own financial situation or influence his mother's refusal to pay. Id. at 89. Trial counsel also explained that he advised Spivey that he should allow the trial court to appoint an assistant public defender who would have an investigatory budget, but Spivey refused trial counsel's willingness to withdraw and insisted he remain on the case. Id. Based on this record, the Court cannot find that trial counsel acted deficiently in this regard.

Trial counsel also testified that he spoke to William Griffin at length before trial and even listed him as a potential defense witness. Id. at 74. But after considering Griffin's potential eye-witness testimony about B.C. accusing

24

Spivey of stealing a large quantity of marijuana, trial counsel made a strategic decision not to call Griffin as a witness because it could have subjected Spivey to additional charges. Id. at 90. Also, it is unclear if Griffin would have offered beneficial testimony at trial. At the evidentiary hearing, Griffin described only one interaction he had with B.C., which involved a very upset B.C. showing up at Griffin's apartment in hopes of finding Spivey because she believed Spivey stole her drugs. Id. at 6-21. Griffin also testified that he, B. Spivey, and B.C. have never been at the same location at the same time, and Griffin believed B.C. and B. Spivey were a couple because B. Spivey told him they were. Id. at 13. But Griffin further explained that B.C. never told him she was in a relationship with B. Spivey, she never talked to Griffin about the details of Spivey's sexual battery, and B.C. never even told Griffin she had sex with Spivey. Id. at 20, 31. Additionally, it is unclear if the "relative of B.C." would have provided helpful evidence about a "prior false accusation." Indeed, during her pretrial deposition, B.C. only mentioned one relative. She testified that her grandfather sexually molested her when she was a child, and other than her grandfather, she has never accused anyone else of a crime until Spivey. Doc. 6-30 at 6-7.

Whether an attorney's actions derived from a strategic decision is an issue of fact, and the state court's decision on that issue is presumptively correct. Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998); see

also <u>Chandler v. United States</u>, 218 F.3d 1305, 1314, n.14 (11th Cir. 2000) ("[A] court must not second-guess counsel's strategy."). Having chosen a reasonable defense strategy, Spivey's trial counsel was not ineffective for failing to call Griffin or B.C.'s "relative" as witnesses. And Spivey fails to show that but for trial counsel's alleged error, the outcome of his case would have been different. Accordingly, Spivey is not entitled to relief on these Sub-Claims.

### ii. <u>Sub-Claim Three</u>

Spivey also asserts that his trial attorney failed to obtain B.C.'s phone records to show B.C. regularly communicated with Spivey and that she was often the one who initiated their phone calls. Petition at 7. Spivey raised Sub-Claim Three in ground two of his initial Rule 3.850 motions. Doc. 6-16 at 6-7; Doc. 6-18 at 6-7. Following an evidentiary hearing on this issue, the trial court denied the claim, stating:

> Defendant states counsel was ineffective for failing to subpoena the victim's phone records. Defendant avers the phone records would have rebutted the victim's assertion that she did not know Defendant by showing she repeatedly called Defendant in the months prior to the incident and several times after, but Defendant did not answer or call her back. Defendant also states the records would have corroborated Griffin's testimony that the victim called Griffin looking for Defendant after Defendant would not answer her calls. Defendant maintains this evidence would have attacked the victim's credibility, and that but for counsel's errors, Defendant would not have been convicted.

> At the evidentiary hearing, Defendant testified that the victim called and texted him following their sexual encounter, and William Griffin testified the victim called him looking for

Defendant. Defendant testified that he informed counsel of these calls and asked counsel to get the phone records and the text messages. Defendant testified that counsel told him he did not seek the phone records because he was "absolutely certain" Defendant would not be going to trial as there was no potential for prosecution.

Counsel testified that he was aware of the victim trying to contact and find Defendant following the incident. However, counsel noted that Defendant was arrested approximately a year after the sexual encounter between Defendant and the victim occurred and by that time, the text messages would no longer be available. As far as the phone records go, counsel acknowledges that he knew how to subpoena those records, but did not do so for a variety of reasons. First, counsel indicated that calls between Defendant, Griffin, Defendant's sister[] Spivey ("[B. Spivey]"), and the victim would not be too unusual since they all knew each other, and the evidence would, thus, not be too significant. Additionally, counsel noted Griffin had told him the phone calls came from [B.] Spivey's phone, not the victim, and thus would not show that it was the victim making the contact.

Important to counsel's decision not to obtain or present evidence of the phone calls was because the calls were reportedly in an effort to retrieve a significant amount of marijuana that the victim and [B.] Spivey believed Defendant stole from them. Counsel did not want this evidence presented to the jury for a number of reasons and made a strategic decision to forgo the presentation of certain evidence to ensure the drug issue was not presented. Counsel noted that to do so [he] would have to concede his client was a criminal, but argue not for the reasons charged and stated he never had much luck pursuing that line of defense. Moreover, Defendant did not believe the State knew of the drug issue and was concerned that the State would pursue an additional drug charge if they found out, due to the unusual string of arrests of Defendant for various crimes, all of which counsel was able to get Defendant out of other than this conviction. Additionally, counsel was concerned that another charge may lead to enhanced sentencing exposure for Defendant. Counsel testified that he was confident in Defendant's chances at trial in this case because there were "serious evidentiary problems" in this case.

Counsel also noted he would have discussed his trial strategy with Defendant and Defendant was present throughout trial during which they continued to discuss their strategy. Further, when the trial court questioned Defendant regarding counsel's representation, Defendant acknowledged he was satisfied with counsel's strategy to just call Defendant and the one medical expert to testify. After considering the avenues for Defendant's case, counsel felt this was the best strategy. This Court does not find that strategy to be unreasonable and, thus, does not find counsel to have acted deficiently in this regard.

Moreover, as to prejudice, this Court notes counsel vigorously cross examined the victim and highlighted issues for a credibility determination, including: (1) different statements made by the victim; (2) how the position she alleges she and Defendant [were] in would render an unwilling assault difficult, if not, impossible; (3) how she allegedly slept through Defendant removing her clothes; (4) the victim's use of illegal drugs the night of the offense; (5) that two other individuals were so close during the incident that the victim could have called out to them but did not; and (6) the victim's delay in reporting. This Court does not believe there to be a reasonable probability the result of the proceeding would have been different had counsel obtained the victim's phone records. For all the above reasons, Defendant is not entitled to relief on this Ground.

Doc. 6-23 at 4-7 (record citations omitted). Spivey appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Doc. 6-33.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of trial counsel's testimony at the evidentiary hearing as well as the record and applicable law, the Court concludes that the state court's adjudication of this

28

<u>Strickland</u> claim is neither contrary to nor an unreasonable application of clearly established federal law. And the state court's decision did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Nevertheless, even assuming the state court's adjudication is not entitled to deference, Spivey is still not entitled to relief. Again, having chosen a reasonable defense strategy, Spivey's trial counsel was not ineffective for failing to subpoena phone records. Because all the individuals involved in this case had known each other for years, trial counsel "was unsure that [evidence] would really prove anything." Doc. 6-22 at 64. He also explained that Griffin advised him that the calls and texts he received came from B. Spivey's phone, not B.C.'s phone, and the phone records likely would have emphasized accusations that Spivey stole a large quantity of marijuana. <u>Id.</u> at 58. Thus, trial counsel made a tactical decision to not subpoena any phone records. <u>Provenzano</u>, 148 F.3d at 1330; <u>see also</u> <u>Chandler</u>, 218 F.3d at 1314, n.14. Sub-Claim Three is without merit, and relief on the claims in Ground Two are due to be denied.

## C. Ground Three

Spivey again raises several Sub-Claims premised on allegations of ineffective assistance of counsel. To succinctly address each Sub-Claim, the Court groups common and related assertions into two sections.

i. <u>Sub-Claim One, Sub-Claim Two, and Sub-Claim Three</u>

Spivey contends that his trial attorney was ineffective for failing to challenge the state's use of the "rape shield" law, which hindered Spivey's right to confront and cross-examine B.C. about whether she would ever have sex with a man. Petition at 8. Spivey also asserts his trial counsel was ineffective for failing to challenge the presentation of "highly prejudicial character evidence" regarding B.C. that allowed the state to shift the burden of proof. <u>Id.</u> at 8. Spivey raised similar claims in grounds six and three of his initial and amended Rule 3.850 motions. Doc. 6-16 at 7-8, 12; Doc. 6-18 at 7-8, 12. The trial court summarily denied the claims, stating:

> Defendant avers counsel was ineffective for failing to protect Defendant's right to confront and cross-examine witnesses against him when the State opened the door. Specifically, Defendant suggests that by the victim claiming she was lesbian and would never consent to a man, she opened the door to cross examination "regarding the incident with the victim's uncle and others." Defendant asserts the victim waived her protections under the rape shield laws when she brought up her sexuality.

> On October 31, 2017, this Court granted Defendant sixty days leave to amend this Ground to give necessary detail regarding this Ground. Specifically, Defendant did not specifically identify what incidents he was alleging counsel should have presented regarding "the victim's uncle and others." In his Amended Motion, Defendant still does not give more specific allegations and only adds that counsel did not cross-examine the victim regarding her "prior false allegations of sexual conduct." Thus, this Court finds the claim insufficiently pled as to any cross examination regarding "others" not specified by Defendant and attempts to address the claim with regard to [the victim's] uncle below.

Initially, this Court notes that in the victim's deposition, she was asked about having reported being raped before and indicated she had been molested by her grandfather as a child; however, nothing was mentioned as to an uncle. Moreover, counsel specifically asked the victim whether she ever accused anyone else of a crime other than her grandfather, to which the victim responded, "No." B. Spivey is the one who mentioned that the victim reported to her that she thought it was a dream and that she "was just having a really bad dream about her uncle and everything again." Thus, it can be reasoned that if counsel had asked the victim about an incident with her uncle, she would have responded as she did in her deposition, which would not have been beneficial for Defendant.

Moreover, this Court finds such evidence would have been inadmissible if solely intended to show the victim was inclined to lie about sexual abuse. See Pantoja v. State, 59 So. 3d 1092 (Fla. 2011). Defendant does not suggest this evidence would be for any other purpose but to impeach her and aid his consent defense. Moreover, Defendant has failed to give any specifics regarding the alleged incident with the uncle in order for this Court to conduct a more thorough analysis like in Pantoja of other purposes for the admission of this evidence. Accordingly, this Court finds Defendant is not entitled to relief on this Ground.

. . . .

Defendant contends counsel was ineffective for failing to object to prejudicial and inadmissible character evidence of the victim. Specifically, Defendant states counsel should have objected pretrial and during trial to the admission of inadmissible character trait evidence showing that the victim was a lesbian and would not consent to sex with a man. Defendant further contends this evidence shifted the burden to Defendant and bolstered the victim's credibility.

On October 31, 2017, this Court granted Defendant sixty days leave to amend this Ground to identify with specificity what evidence to which he is referring. Defendant was granted two extensions of time in which to file his amendment. Defendant, however, never specifically identified what evidence or testimony

to which he was referring. This Court, however, will address this claim on the merits regarding all testimony regarding the victim's sexual orientation.

> Specifically, this Court finds the testimony presented regarding the victim's sexual orientation was relevant and admissible to rebut the defense's position that [the] sexual encounter was consensual. Moreover, this Court finds such evidence did not shift the burden onto Defendant to prove the act was consensual. Accordingly, this Court finds counsel cannot be deemed deficient. See <u>Schoenwetter v. State</u>, 46 So. 3d 535, 546 (Fla. 2010) (finding counsel cannot be deemed ineffective for failing to make a meritless objection). Accordingly, Defendant is not entitled to relief. See <u>Strickland</u>, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Doc. 6-23 at 7, 10-11 (record citations omitted). Spivey appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Doc. 6-33.

The Court addresses these claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Alternatively, even assuming the state court's decision is not entitled to deference, these claims are still without merit. As the state court noted,

prohibiting Spivey from introducing evidence of B.C.'s alleged past sexual abuse did not violate Spivey's confrontation rights because B.C.'s prior statements would not have contradicted anything she said during her trial testimony. Indeed, during her deposition, B.C. testified that when she was a child, her grandfather molested her, but she had never been raped before this incident. Doc. 6-30 at 6. She also stated that other than her grandfather, she had never accused anyone else of a crime. Id. at 38. She never made any sworn statements during her deposition about a sexual encounter with an uncle, or any other man for that matter. See generally State v. Spivey, No. 2013-CF-001047 (Fla. 4th Cir. Ct.) (Doc. 109).[7] Therefore, the state retained an enforceable interest in shielding the presentation of B.C.'s childhood sexual abuse.

But, likely of more import, exclusion of that evidence did not preclude Spivey from presenting a full and fair defense because nothing shows that B.C.'s history, especially her childhood exploitation, would have established she consented to the encounter with Spivey. Trial counsel also was not prohibited from generally questioning B.C. about her sexual orientation, and

_____

[7] Respondents provided an excerpt from B.C.'s pretrial deposition. Doc. 6-30. The transcript of the entire deposition has been filed with the trial court, and thus the Court takes judicial notice of Spivey's state court dockets. See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice.").

he tried to impeach her, although unsuccessfully, regarding that matter during his cross-examination. Doc. 6-2 at 74-75. As such, Spivey fails to show that but for trial counsel's alleged error, the outcome of his trial would have been different, and thus Spivey is not entitled to relief.

As to Spivey's argument that his trial counsel should have objected to "prejudicial character evidence" that B.C. is a lesbian, Spivey's own trial testimony established the relevance of the state's presentation of such evidence. Indeed, attempting to prove B.C. consented to the sexual encounter, Spivey testified at trial that while B.C. is "supposedly" a lesbian, he believed B.C. to be bisexual and suffering from "sexual identity issues." Doc. 6-2 at 214, 285. Directly related to Spivey's testimony and consent defense, the state presented testimony that B.C. is very open and steadfast in her sexuality as a lesbian, exclusively dates women, and has never been interested in having sex with a man, much less Spivey. Doc. 6-2 at 60, 89, 110-11. Although Spivey had a constitutional right to present his consent defense, the state was justified in presenting relevant evidence rebutting Spivey's position. As a result, the state's presentation of evidence about B.C.'s sexuality was relevant, admissible, and did not shift the burden of proof. Therefore, these Sub-Claims are without merit.

## ii. <u>Sub-claim Four</u>

In another Sub-Claim, Spivey maintains that his trial counsel was ineffective for failing to challenge the state's reference to a "rape" movie containing facts similar to Spivey's alleged assault of B.C. <u>See</u> Petition at 8. He contends that this comment exacerbated the state's improper burden shifting. <u>Id.</u> Spivey raised a similar claim in ground fourteen of his initial Rule 3.850 motions. Doc. 6-16 at 22-23; Doc. 6-18 at 22-23. The trial court denied the claim, asserting:

> Defendant suggests counsel acted deficiently by failing to object and move for [a] mistrial when the State introduced "highly prejudicial" collateral evidence. Defendant avers it was improper for the State to be able to elicit testimony from Defendant's sister that she, the victim, Defendant, and a friend were watching movies the night of the incident and in one of the movies, a man rapes a woman while she is sleeping. Defendant states this implied he got the idea to rape the victim from this movie. Defendant states that but for this evidence being presented, he would not have been convicted.
>
> Again, all relevant evidence is generally admissible. § 90.402, Fla. Stat. This evidence was relevant as it tended to prove that Defendant acted as he saw in the movie and penetrated the victim while she was sleeping. Thus, counsel cannot be ineffective for failing to object or move for mistrial. <u>See</u> <u>Schoenwetter</u>, 46 So. 3d at 546; <u>Middleton v. State</u>, 41 So. 3d [357, 360 (Fla. 1st DCA 2010)]. Plus, there is no reasonable probability that the outcome of the proceeding would have been different without that testimony. Accordingly, Defendant is not entitled to relief on this Ground.

Doc. 6-23 at 17-18. Spivey appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Doc. 6-33.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. In so doing, the Court concludes that the state court's adjudication of this <u>Strickland</u> claim was neither contrary to nor an unreasonable application of clearly established federal law. And the state court's decision did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Nevertheless, even if the state court's adjudication is not entitled to deference, this claim is still without merit. During trial, B. Spivey testified that on the night of the incident, she, B.C., and Santiago went to Spivey's apartment and watched movies. Doc. 6-2 at 112-14. The prosecutor and B. Spivey then had the following brief exchange:

> Q And this movie that you watched, I believe you said it was called Kids.
>
> A Yes, ma'am.
>
> Q Do you recall any specific scene that stood out to you in this movie?
>
> A Yes, ma'am. There's actually a part in the movie where there's a girl asleep on the couch and they actually have the guy pushing himself on her while she's asleep.
>
> Q Okay. And was that at the end of the movie?
>
> A Yes, ma'am.

Doc. 6-2 at 121. After that testimony, B. Spivey made no other statements about this film segment and no other state witness testified or mentioned this particular movie scene.

Spivey then testified in his own defense that they watched that specific movie because B. Spivey had never seen it and she wanted to watch it, challenging any potential implication that this movie predisposed him to commit a sexual battery. Id. at 261. Additionally, during his closing argument, trial counsel attempted to highlight the triviality of referencing this movie scene, arguing:

> [B. Spivey] also said they happened to watch this movie called Kids which ended with a girl that was asleep and the guy jumped on top of her and started having sex with her against her will. And that was one of the movies that was watched. We can't get inside the Defendant's head. You cannot sit here and go – there's not going to be an element or instruction that says: Element number four, why did the Defendant do this. Ain't gonna happen.

Doc. 6-2 at 332.

Upon review of this record, trial counsel presented evidence and argument to reduce the impact of B. Spivey's testimony about this movie. But considering the other evidence the state produced to prove Spivey's culpability, Spivey has failed to show that but for B. Spivey's single reference to this film scene and trial counsel's failure to object to this isolated statement, the outcome of his case would have been different. This Sub-Claim is without merit, and relief on the claims in Ground Three are due to be denied.

### D. Ground Four

Spivey asserts that his trial counsel was ineffective for failing to object, and instead stipulating to, the presentation of B.C.'s inadmissible hearsay statements. Petition at 10. According to Spivey, the state presented B.C.'s "prior consistent statements" and "prior recorded statements" to corroborate B.C.'s version of events even though there was no justification for their admission and improper influence. Id.

Spivey raised similar claims in grounds four and five of his initial Rule 3.850 motions. Doc. 16 at 9-11; Doc. 18 at 10-13. The trial court summarily denied the claims as follows:

> Defendant suggests counsel acted deficiently by failing to object to the victim's inadmissible prior consistent statements made regarding the incident and her sexual orientation. Defendant states the State presented these prior consistent statements and character evidence discussed in Ground Three through three witnesses.
>
> On October 31, 2017, this Court granted Defendant sixty days leave to amend this Ground to specifically identify what prior consistent statements to which he was alleging counsel should have objected and Defendant was given two extensions of time in which to file this amendment. Defendant, however, still only mentions the victim's sexual identity and alleges prior consistent statements were made to bolster the victim's credibility. Below, this Court does its best to address Defendant's vague allegations.
>
> This Court notes that two witnesses testified that the victim reported the assault to them but did not testify to any details. This Court finds that these were not inadmissible prior consistent statements. Therefore, this Court finds counsel was not deficient in failing to object to these comments. The only witness that

testified to specifics of the victim's report of the incident was the nurse who evaluated her. This Court finds that these statements were not inadmissible prior consistent statements, but rather admissible statements made for purposes of medical diagnosis or treatment. <u>See</u> § 90.803(4), Fla. Stat. (2013)[.] Moreover, even assuming counsel should have objected to this limited testimony, this Court finds no reasonable probability the result of the proceeding would have been different. This is particularly true in light of the nurse's testimony that she could not say whether any of the limited findings were from a consensual or nonconsensual sexual encounter.

At trial, there were two witnesses other than the victim [who] testified that they knew the victim to be a lesbian who did not date men. However, this testimony does not qualify as inadmissible prior consistent statements. The witnesses were not testifying as to statements previously made by the victim, but rather what they know of her after having been acquainted with her. Thus, this Court finds counsel cannot be deemed deficient for failing to make a meritless objection. For all the foregoing reasons, Defendant is not entitled to relief on this Ground.

. . . .

Defendant asserts counsel was ineffective for stipulating to, rather than objecting to, the admission of the victim's sexual assault report. Specifically, Defendant alleges this report was inadmissible hearsay that bolstered the credibility of the victim.

This Court acknowledges that the victim's Forensic Sexual Assault Examination Report was admitted into evidence without objection. However, this Court finds the report was admissible under hearsay exceptions. The report itself is admissible under the business records exception of section 90.803(6), Florida Statutes, and the victim's statements within the report are admissible as statements made for the purposes of medical diagnosis or treatment pursuant to section 90.803(4). Thus, counsel cannot be deemed ineffective for failing to object[]. <u>See</u> <u>Schoenwetter v. State</u>, 46 So. 3d 535, 546 (Fla. 2010) (finding counsel cannot be deemed ineffective for failing to make a meritless objection).

Additionally, this Court finds that there is no reasonable probability the result of this proceeding would have been different even had the report not been entered into evidence. Initially, this Court notes that the nurse who examined the victim would still have been able to testify regarding the victim's examination, including her statements. Thus, the statements would still have been presented to the jury. Moreover, counsel used the victim's statements in the report to show inconsistencies in and issues with the victim's statements; such as whether she told Defendant to stop and whether he held her down to prevent her from moving. Accordingly, this Court finds Defendant is not entitled to relief.

Doc. 6-23 at 8-10 (record citations omitted). Spivey appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Doc. 6-33.

To the extent that the state court decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In any event, assuming the state court's adjudication is not entitled to deference, the claim in this Ground is still without merit. A review of the record shows that as to the alleged "prior consistent statement," only two witnesses – B. Spivey and Adrian Santiago – testified that B.C. told them about the sexual

40

battery. During trial counsel's cross-examination of Santiago, he tried to attack Santiago's credibility, eliciting testimony that while Santiago was in the same room during the assault, he conceded that he still witnessed nothing. Doc. 6-2 at 104. Santiago also explained that other than what B.C. told him, he had no independent basis to believe that Spivey sexually assaulted B.C. or that a sexual act even occurred that night. Id. at 104.

As to B. Spivey, during the state's direct examination, she briefly testified that B.C. told her what happened, but she did not testify to any specific statements or details that B.C. made to her about the incident. Id. at 118. During cross-examination, trial counsel also attempted to challenge B. Spivey's credibility, prompting testimony that B. Spivey's only knowledge of the sexual assault stemmed from B.C.'s statements to her and that she personally witnessed nothing. Id. at 125.

Prior to B. Spivey's and Santiago's trial testimony, however, B.C. testified at trial about specific details of Spivey's sexual assault of her. She explained that she was sleeping on a mattress on the floor and Santiago was asleep on the couch next to her. Doc. 6-2 at 48-49. She was lying on her stomach when blunt pain in her vaginal area woke her up. Id. at 49. She then realized that her sweatpants were pulled down and Spivey was lying on top of her back, thrusting his penis into her while he held her facedown with his forearm. Id. at 50. B.C. stated she was so scared she could not speak or yell, but eventually

41

Santiago began waking up, and when Spivey noticed, Spivey got up and ran to the laundry room for a towel. Id. at 52. B.C. then immediately asked B. Spivey and Santiago if they could leave. Id. at 53-54. B.C. testified that she mentioned something to Santiago about what happened so he would understand why she wanted to leave so quickly, and that the next day, she told B. Spivey what happened. Id. at 56-57. As such, considering B.C.'s trial testimony, Spivey cannot demonstrate that but for trial counsel's failure to object to B. Spivey and Santiago's brief, nondetailed "consistent statements," the outcome would have been different.

Spivey also cannot demonstrate that trial counsel was ineffective for failing to object to "prior recorded statements." At trial, Registered Nurse Nona Miles testified that she is a sexual assault nurse examiner with experience conducting rape exams. Doc. 6-2 at 185-86. Miles testified she conducted a sexual assault exam on B.C. and during the exam, she contemporaneously documented her observations in a Forensic Sexual Assault Examination Report. Id. at 187. Miles then referred to this Report during her testimony to assist in detailing her observations during the exam. Id. at 188. Upon review, Miles's reference to the Report and her testimony describing her exam clearly were meant for the medical diagnosis or treatment of B.C., which are exceptions to the hearsay rule. See Fed. R. Evid. 803(4) ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is

available as a witness. . . . A statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."). Because this evidence was admissible, trial counsel cannot be ineffective for failing to object. As such, Spivey is not entitled to relief, and Ground Four is due to be denied.

## E. Ground Five

Spivey contends that his trial counsel was ineffective for failing to object or move for a mistrial when a state witness commented on Spivey's right to remain silent. Petition at 16. Spivey raised this claim in ground seven of his initial Rule 3.850 motions. Doc. 6-16 at 13-14; Doc. 6-18 at 15-16. The trial court summarily denied the claim, finding:

> Defendant contends counsel was ineffective for failing to object and move for [a] mistrial when State witness, "Detective Aiken," commented on Defendant's right to remain silent by stating that Defendant refused to talk to him.
>
> Officer Jeff Aiken ("Officer Aiken") testified at Defendant's trial. However, Officer Aiken did not speak with Defendant nor make any comment regarding his attempt to contact Defendant. Officer Ervin Bartley of the Jacksonville Sheriff's Office also testified at Defendant's trial. Officer Bartley testified on direct examination that he made contact with Defendant over the phone, but Defendant "declined to come down for an interview." During cross examination, Officer Bartley stated that he never spoke to Defendant in person, but did speak with him over the phone and the only thing "of note" Defendant said was that he declined to come to the station for an interview.

Even assuming arguendo counsel was ineffective for failing to object to this comment as an improper comment on Defendant's right to remain silent, this Court finds there is no reasonable probability the outcome of the proceeding would have been different if these brief comments had not been made. This Court finds this particularly true as it was not a feature of the trial and was not even mentioned in the State's closing argument. Additionally, during his testimony, Defendant testified that once he heard the victim was claiming the intercourse was nonconsensual he called counsel, who told him not to talk to the police. Defendant testified that he assumes that is why he declined to speak with an officer, although he did not remember receiving such a phone call, and that it may have been that the officer called but Defendant did not return the call. Accordingly, Defendant is not entitled to relief on this Ground.

Doc. 6-23 at 11-12 (record citations omitted). Spivey appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Doc. 6-33.

The Court addresses this claim under the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Alternatively, assuming the state court's adjudication is not entitled to deference, this claim still fails. To explain Spivey's actions in refusing to speak with Officer Bartley, trial counsel elicited testimony from Officer Bartley that

when he called Spivey, Bartley did not get into any details about the case or why he wanted to speak with Spivey but that he simply asked Spivey to come down for an interview and Spivey declined. Doc. 6-2 at 140. Trial counsel used this testimony to highlight Spivey's right to terminate the conversation and show that Spivey's decision to decline an in-person interview was not dispositive of his guilt. This testimony did not become a feature of the trial, and Spivey has failed to show that but for this alleged error, a reasonable probability exists that the outcome would have been different. As such, Ground Five is denied.

### F. Ground Six

Spivey asserts his trial counsel was ineffective for failing to present a defense showing that B.C. and B. Spivey lied at trial. Petition at 17. According to Spivey, B.C. and B. Spivey were in a relationship at the time of the alleged incident, and thus B.C. reported that the encounter was non-consensual so she could hide the act from B. Spivey. Id. He also contends that B. Spivey had motive to lie at trial because she wanted to protect B.C. since they were in a relationship. Id. Additionally, he maintains that B.C. lied at trial because she was upset that Spivey "ghosted" her after they had sex. Id. at 17-18.

Spivey raised substantially similar allegations in grounds eleven and twelve of his initial and amended Rule 3.850 motions. Doc. 6-16 at 18-21; Doc.

6-18 at 19-21. The trial court conducted an evidentiary hearing on these grounds, after which it denied the claims as follows:

> In both grounds, Defendant further avers counsel acted deficiently by failing to establish the victim's bias and motive to lie. First, Defendant maintains that after the victim and Defendant had sex, the victim "expected more than a one-night stand" and became upset after Defendant would not take her calls. Secondly, Defendant maintains the victim and Defendant's sister were in a relationship at the time of the incident, and the victim had motive to lie in order to protect her relationship with Defendant's sister. Defendant states counsel's decision not to pursue this line of questioning was due to his belief that they "should not sling mud." Defendant states the victim's credibility and motive were crucial in this case and but for counsel's failure to act in this regard, Defendant would have been acquitted.

> As noted in Ground Two, this Court notes counsel indeed highlighted for the jury numerous issues regarding the victim's testimony to be considered during a credibility evaluation. While Defendant asserts counsel should have presented evidence that the victim expected more than a one night stand and was upset after he did not answer her calls, the only evidence Defendant could offer in support would have been his own testimony and the victim's phone records. This Court adopts its analysis from Ground Two to find that counsel was not deficient for failing to present the phone records. This Court also finds that Defendant's testimony regarding the victim's alleged phone calls could have opened the door to the prejudicial testimony regarding drug theft as discussed in Ground Two and provides support for why counsel would not present such. Moreover, such testimony would have been directly contradictory to the victim['s] trial testimony that not only did she have no interest in Defendant, she had no interest in men because she was a lesbian.

> As for counsel's alleged failure to present evidence that the victim and Ms. Spivey were in a relationship, this Court notes counsel did not ask the victim about whether she was in a relationship with Defendant's sister. However, this Court also finds this is reasonable based on the victim's responses to such

questioning during her deposition in which she emphatically denied a relationship or ever being sexually intimate with [B.] Spivey. In B. Spivey's deposition, she also denied any romantic relationship with the victim. Additionally, the only evidence Defendant suggested should have been offered for this point was the testimony of Griffin, who testified at the evidentiary hearing that [B.] Spivey told him she was in a relationship with the victim. This proposed evidence would likely be inadmissible hearsay, and even if offered as a prior inconsistent statement to a denial of that relationship, the evidence would not be able to be considered as substantive evidence. For these reasons, this Court finds counsel was not ineffective in this regard and denies these Grounds.

Doc. 6-23 at 14-16 (record citations omitted). Spivey appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Doc. 6-33.

The Court addresses this claim under the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, even if the state court's adjudication is not entitled to deference, this claim still lacks merit. As the state court noted, during their pretrial depositions, B.C. and B. Spivey categorically denied ever being in a romantic relationship with one another. Doc. 6-30 at 4, 12. During the

47

evidentiary hearing, trial counsel testified that he considered attempting to present evidence that B.C. and B. Spivey's own sexual relationship motivated them to falsely accuse Spivey of the offense, but since B.C. and B. Spivey denied being in a relationship, that approach "ultimately [] didn't go anywhere." Doc. 6-22 at 72. While William Griffin testified at the evidentiary hearing that he thought B.C. and B. Spivey were in a romantic relationship, he explained that he learned of that fact because B. Spivey told him that information. Id. at 19. He stated that B.C. never confirmed that fact and he never suggested that he ever personally witnessed them being romantic. Id. at 20. Having chosen a reasonable defense strategy, Spivey's trial counsel was not ineffective for failing to question B.C. or B. Spivey regarding this point, and any testimony from Griffin would have been inadmissible hearsay. Provenzano, 148 F.3d at 1330; see also Chandler, 218 F.3d at 1314, n.14 ("[A] court must not second-guess counsel's strategy."). As such, trial counsel was not deficient, and relief on the claim in Ground Six is due to be denied.

## G. Ground Seven

Spivey alleges that his trial counsel was ineffective for failing to object to the prosecutor's improper statements made during closing argument. Petition at 19. According to Spivey, the prosecutor improperly asked the jury to "experiment" and try on the sweatpants B.C. was wearing during the alleged incident. Id.

Spivey raised this claim in ground nine of his initial and amended Rule 3.850 motions. Doc. 6-16 at 15-16; Doc. 6-18 at 17-18. The trial court summarily denied the claim as follows:

> Defendant asserts counsel acted deficiently by failing to object and ask for a curative instruction based on an allegedly improper closing argument. In particular, Defendant contests it was improper for the State to invite the jury to try on the victim's clothing to corroborate the victim's assertion that Defendant took off her sweatpants and underwear without waking her up. Defendant avers this was improper as the standard jury instructions tell jurors not to conduct experiments.
>
> During closing argument, the State said:
>
>> Based on the physical evidence that you have, go back there. The clothing is out of packages. You could play with the elastic. You see how easy it is to take them on or take them off. It's up to you. Do what you want. Try them on.
>>
>> The Defendant's testimony, Dr. V[a]g[o]vic's testimony, and that opinion. When you compare all that and you look at this, when you look at the State's witnesses, the State's case, there's only one conclusion: [the victim] was violated and penetrated by this defendant without permission and against her will.
>
> This argument is in response to Dr. V[a]g[o]vic's testimony that Defendant could not have pulled down the victim's sweatpants and underwear without waking her up. This Court concludes counsel was not deficient for failing to object to this statement. Moreover, even assuming counsel acted deficiently for failing to object to the State telling the jurors to try on the victim's clothes, there is no reasonable probability the result of the proceeding would have been different but for this brief statement. Defendant is, thus, not entitled to relief.

Doc. 6-23 at 13-14 (record citations omitted). Spivey appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Doc. 6-33.

The Court addresses this claim under the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Spivey is not entitled to relief on this claim.

That said, even if the state court's adjudication is not entitled to deference, this claim still lacks merit because the prosecutor's statements, in context, did not affect the outcome of Spivey's trial. Indeed, a reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire argument and the trial as a whole, because "[c]laims of prosecutorial misconduct are fact-specific inquiries which must be conducted against the backdrop of the entire record." United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995); accord United States v. Young, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be

viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

Here, Spivey called Dr. Richard John Vagovic as a defense witness who stated that he routinely testifies in cases related to rape. Doc. 6-2 at 235-36. According to Dr. Vagovic, he believed that if B.C. was lying on her stomach at the time, she would have woken up when Spivey took her pants and underwear off. Id. at 252. During his closing argument, trial counsel highlighted this testimony and attempted to challenge B.C.'s credibility, arguing:

> One, she already said she's not intoxicated. To take these sweatpants with a tied draw string, elasticized waistband, elasticized ankle legs on both, pull those off of her. And after we've done that deed we have boxer shorts that have an elasticized waistband – and when you're in the Jury room you will have these. It's a tight elasticized waistband. And then we get down to the legs. Elasticized waistband. Those all came off and she wasn't awakened. I don't find that that matches my common sense, but you [are] the deciders of the facts of this case, but these are the things that don't make sense.

Doc. 6-2 at 319. During his rebuttal, the prosecutor then made the statements Spivey challenges now. Id. at 344. Accordingly, the prosecutor's statements, reviewed in their proper context, were not impermissible but instead were a direct response to the argument trial counsel made in his closing. Spivey has failed to show that the prosecutor's statements affected the fairness of his trial or that but for trial counsel's alleged error in failing to object, the outcome

would have been different. Relief on the claim in Ground Seven is due to be denied.

**H. Ground Eight**

Spivey maintains that the cumulative effect of trial counsel's ineffectiveness deprived him of a fair trial. Petition at 21. Spivey raised this claim in his initial Rule 3.850 motions. Doc. 6-16 at 23; Doc. 6-18 at 24. In addressing this issue, the trial court ruled as follows:

> Defendant asserts that the aggregate effect of the above errors amounts to cumulative error. "Claims of cumulative error do not warrant relief where each individual claim of error is either "meritless, procedurally barred, or [does] not meet the Strickland standard for ineffective assistance of counsel." Schoenwetter, 46 So. 3d at 562 (quoting Israel v. State, 985 So. 2d 510, 520 (Fla 2008)). Having found that all of Defendant's previous claims were either meritless, procedurally barred, or did not meet the Strickland standard of ineffective assistance of counsel, Defendant is not entitled to relief.

Doc. 6-23 at 18. The First DCA per curiam affirmed without a written opinion. Resp. Ex. 10.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, and after review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts

in light of the evidence presented in the state court proceedings. Thus, Spivey is not entitled to relief on the basis of this claim.

Nevertheless, if the state court's adjudication is not entitled to deference, this claim lacks merit. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Because the Court has determined that none of Spivey's individual claims of error or prejudice have merit, Spivey's cumulative error claim cannot succeed. See United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Thus, relief on the claim in Ground Eight is due to be denied.

## I. Ground Nine

Spivey contends that his trial counsel was ineffective for failing to advise him of the state's plea offers. Petition at 22. According to Spivey, the state made a nine-year offer, a seven-year offer, a five-year offer, and a four-year offer; however, trial counsel never relayed any of these offers to Spivey. Id.

Spivey raised a similar claim in his second Rule 3.850 motions, which alleged newly discovered evidence of trial counsel's failure to convey a five-year plea offer. Doc. 6-34; Doc. 6-35. The trial court appointed postconviction counsel for Spivey and conducted an evidentiary hearing on this claim. Doc. 6-37. Later, the trial court denied the second Rule 3.850 motions, explaining, in pertinent part:

> In the instant Motion, Defendant alleges one ground of ineffective assistance of counsel based on newly discovered evidence that counsel failed to convey a five-year plea offer. Defendant first learned about the offer at the evidentiary hearing on his prior Rule 3.850 Motions when postconviction counsel, James Boyle, Esquire, questioned Defendant about why he did not accept the five-year plea offer. Defendant attaches an affidavit from Kathyrine Robbins, who asserts Boyle told her about the plea offer at the evidentiary hearing.
>
> . . . .
>
> At the evidentiary hearing on [this claim], Defendant testified Christopher Wickersham represented him in the instant case and various other Duval County cases. Mr. Wickersham began representing Defendant in the current case around 2012 or 2013. Defendant testified Mr. Wickersham reviewed the minimum and maximum penalties with him. Mr. Wickersham also discussed the strengths and weaknesses of the case. Defendant testified Mr.

Wickersham did not really review the sentencing guidelines with him and alleges Mr. Wickersham told him that he would not be convicted at trial. Defendant alleges he did not know about any plea offers from the State or the defense. He never told Mr. Wickersham about wanting to resolve the case or make a plea offer because he did not know about such an option.

Mr. Wickersham only discussed one proposed resolution with Defendant after trial. The State proposed if Defendant admitted his guilt at sentencing, the State would recommend a fifteen-year term of imprisonment based on his designation as a Prison Releasee Reoffender. Defendant refused the offer because he did not want to admit guilt.

Through postconviction counsel, Defendant submitted an affidavit from Kathyrine Robbins as evidence at the []evidentiary hearing [on this claim]. The affidavit was initially attached to Defendant's "Motion for Postconviction Relief/Newly Discovered Evidence," filed on October 29, 2019. In the affidavit, Ms. Robbins states Boyle told her about the plea offer at the evidentiary hearing on Defendant's initial Rule 3.850 Motions. She confirms Defendant did not know about any plea offers from the instant case.

[At the evidentiary hearing on this claim,] Mr. Wickersham testified to representing Defendant at trial in the current case and in approximately four other Duval County cases. Mr. Wickersham is licensed to practice law in the State of Florida. He has conducted multiple Sexual Battery trials since concluding · his representation of Defendant. Mr. Wickersham testified to remembering this case because of the significant weaknesses in the State's case and because he believed in Defendant's innocence. Mr. Wickersham had been friends with Defendant before representing him as counsel. Mr. Wickersham testified the State made multiple plea offers. The State made firm offers of nine years, seven years, and five years prior to trial. During trial, the State made a tentative four-year offer, depending on the allege[d] victim's consent. None of the offers were conveyed in writing or placed on the record during the underlying case. Mr. Wickersham testified that he conveyed all plea offers to Defendant. Mr. Wickersham never advised Defendant that he would definitely receive an acquittal at trial or that he should reject the five-year plea offer.

55

The State initially made a nine-year plea offer after filing Notices of Intent to Classify Defendant as a Habitual Felony Offender, Habitual Violent Felony Offender, and Prison Releasee Reoffender. Mr. Wickersham testified he conveyed this offer to Defendant. He advised Defendant to decline the offer because he believed the term of imprisonment was too lengthy based on the weaknesses in the State's case and believed the State would eventually make a better offer during the pendency of the case. The State then made a seven-year plea offer. Mr. Wickersham testified he visited Defendant to convey the plea offer[.] He advised Defendant to accept the offer, but Defendant did not want to serve time in prison. Thus, Defendant declined the offer. Mr. Wickersham testified the State made the five-year plea offer after he deposed witnesses and further exposed alleged weaknesses in the State's case. Mr. Wickersham visited Defendant to discuss the five-year plea offer. Although Mr. Wickersham thought the State's case had many weaknesses and he was confident in Defendant's case, he was concerned Defendant's sister, [B.] Spivey, would testify against Defendant at trial. He advised Defendant to accept the State's five-year plea offer. Mr. Wickersham testified Defendant did not want to accept the offer because Defendant believed his mother, Kathyrine Robbins, could convince [B.] Spivey not to testify at trial. Further, Defendant did not want to serve time in prison and would only consider serving time in county jail. Defendant declined the five-year offer.

Having had the opportunity to observe the witnesses' demeanors and the manners in which they testified, in conjunction with the record, this Court finds Mr. Wickersham's testimony to be more credible and more persuasive than Defendant's testimony. See Morales v. State, 308 So. 3d 1093, 1098 (Fla. 1st DCA 2020) ("When sitting as the fact-finder in a postconviction evidentiary hearing, the trial judge is . . . free to disbelieve a witness's testimony. Convicted defendants have much to gain by their testimony in these proceedings."). Mr. Wickersham had a detailed recollection of Defendant's case based on his personal relationship with Defendant and the unique facts of the case. It is clear from the testimony of trial counsel that he discussed the State's five-year plea offer with Defendant and advised Defendant to accept the offer. Moreover, trial counsel advised Defendant about the

strengths and weaknesses of his case. Defendant, however, did not want to spend time in prison and was adamant he would prevail at trial because his mother would convince his sister not to testify. Because this Court finds counsel conveyed the five-year plea offer to Defendant and appropriately advised him about the offer's merits, Defendant is not entitled to relief.

Doc. 6-38 at 2-6 (record citations omitted). Spivey appealed, and the First DCA per curiam affirmed the denial without a written opinion. Doc. 6-41.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, and after review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Spivey is not entitled to relief on the basis of this claim.

In any event, even if the state court's adjudication is not entitled to deference, this claim still lacks merit. In the context of plea offers, the prejudice prong requires the movant to show "a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or

both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" <u>Osley v. United States</u>, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting <u>Lafler v. Cooper</u>, 566 U.S. 156, 164 (2012)). But "after the fact testimony concerning [the movant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991).

Here, trial counsel testified at the evidentiary hearing that the state made four plea offers throughout the proceedings, and that he discussed every plea offer with Spivey. Doc. 6-37 at 36. First, trial counsel asserted that the state made a nine-year plea offer, and since trial counsel believed it was "a little high," the nine-year offer would have been the one he "had the least conversation with [Spivey] about because [counsel] thought [he] could do better . . . ." <u>Id.</u> at 35-36. Next, trial counsel explained that the state conveyed a seven-year offer and then a five-year offer. <u>Id.</u> at 36. Trial counsel attested that once those offers were conveyed, he specifically went to see Spivey in person to advise him of each offer and each time urged Spivey to accept. <u>Id.</u> at 34-35. According to trial counsel, Spivey rejected the offers because he was confident his mother would ensure that his sister would not testify against him, something Spivey believed until the point that she took the stand. <u>Id.</u> at 35. Indeed, trial counsel likened Spivey's refusal to consider a plea deal to

58

Germany's 1945 refusal to surrender as Russia invaded Berlin. Id. at 35. Trial counsel also testified that during trial, he asked the state if it would be willing to consider a plea to time served, and the state rejected that offer but specified that it might be willing to consider a four-year plea offer. Id. at 45. Trial counsel explained that Spivey was present and heard the state's offer and that he was one-hundred percent certain he discussed the four-year offer with Spivey. Id. at 47. But, according to trial counsel, Spivey declined that offer as well. Id. at 58.

Upon review of this record, Spivey has not shown a reasonable probability that a plea agreement would have been reached. Although Spivey may now assert he was interested in pleading guilty, "[g]iven [Spivey's] awareness of the plea offer[s], his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer[s]." Diaz, 930 F.2d at 835. Thus, relief on the claim in Ground Nine is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Spivey seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make

this substantial showing, Spivey "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

60

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Spivey appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of September, 2025.


MARCIA MORALES HOWARD
United States District Judge


Jax-7

C:      Jaime Beau Spivey, #J20408
        Counsel of record